Guldner v. Cramm.

---

Gustav Guldner, *Appellant*, v. E. W. Cramm, *Appellee*.

No. 16,793.

SYLLABUS BY THE COURT.

Damages—*Injury to Wife—Loss of Services—Amount of Award —Expenses of Operation for Another Cause*. A man and his wife were traveling upon the public highway in a top buggy, and were negligently struck by a passing automobile. The wife was injured. She was at the time, and had been, suffering with abdominal fibroid tumors. About ten days after the collision with the automobile she was operated upon for the removal of such tumors, and died from the shock produced by the operation. The husband commenced this action to recover damages from the owner of the automobile for the loss of the services of his wife and expenses incurred on

account of the injuries received by her from the automobile. *Held,* that no damages could be recovered in such action on account of the operation.

Appeal from Rice district court. Opinion filed January 7, 1911. Affirmed.

*Prigg & Williams,* for the appellant.
*Foley & Hopkins,* and *Samuel Jones,* for the appellee.

The opinion of the court was delivered by

GRAVES, J.: This is an action for damages for a personal injury, appealed from the district court of Rice county. The appellant and his wife were traveling along the highway in a top buggy, when they were struck by an automobile driven by the appellee. The wife of the appellant was injured by the collision. She was taken to the house of a neighbor and cared for. About a week later she was taken to the hospital at Sterling and operated upon. She died from the effects of the operation, which was for the removal of fibroid tumors. The appellant, the husband of the deceased, commenced this action to recover damages for the loss of the services of his wife and for expenses incurred on account of her injury. The jury returned a verdict in his favor of $224. The appellee offered to confess judgment for $250. The jury returned with their general verdict special findings of fact which read:

"(1) Ques. Was plaintiff's wife, on September 13, 1908, afflicted with fibroid tumors? Ans. Yes.

"(2) Q. If you answer the above question 'Yes,' then state how long plaintiff's wife had been afflicted with such fibroid tumors prior to September 13, 1908. A. We don't know.

"(3) Q. Was plaintiff's wife operated upon for the removal of fibroid tumors about October 2, 1908, by a Dr. P. P. Trueheart? A. Yes.

"(4) Q. Did Dr. P. P. Trueheart, about October 2, 1908, by a surgical operation, remove from plaintiff's wife three or more fibroid tumors? A. Yes.

"(5) Q. If you answer the above question 'Yes,' then state what the weights of such tumors so removed were at the time of the removal. A. Between ten and twenty pounds.

"(6) Q. Did the accident at the time defendant's automobile struck plaintiff's horse cause the fibroid tumors which afflicted plaintiff's wife? A. No.

"(7) Q. How many years do you find that plaintiff's wife would have lived if there had been no accident with the automobile? A. We don't know.

"(11) Q. Was such operation for the removal of fibroid tumors which plaintiff's wife was afflicted with prior to the automobile accident? A. No.

"(12) Q. When was plaintiff first informed that his wife had a fibroid tumor, by Dr. P. P. Trueheart? A. Five or six years ago.

"(13) Q. Did Dr. Staats inform plaintiff and his wife on the morning following the accident that plaintiff's wife was afflicted with tumors? A. Yes.

"(14) Q. Was plaintiff's wife afflicted with heart disease prior to the time of the accident? A. Evidence insufficient.

"(15) Q. If you answer that plaintiff's wife was afflicted with heart trouble prior to the accident, then state if plaintiff knew of such fact at and before the time of the accident. (Objected to.) A. Evidence insufficient.

"(16) Q. Was plaintiff's wife under the care of Dr. Bodenheimer for several years prior to the time of the accident? A. Yes.

"(17) Q. If you answer the above question 'Yes,' then state how frequently Dr. Bodenheimer treated plaintiff's wife. A. About six times.

"(18) Q. What was the direct and immediate cause of the death of plaintiff's wife? A. Shock of operation.

"(19) Q. If you say the automobile accident was the direct and immediate cause of the death of plaintiff's wife, then state fully and particularly in what way it caused or produced her death. (Objected to.) A. No.

"(21) Q. Was plaintiff's wife thrown out of the buggy at the time of the collision with the automobile? A. Insufficient evidence.

"(23) Q. Was plaintiff's wife physically injured at the time of the automobile accident on account of such accident? A. Yes.

"(24) Q. If you answer the above question 'Yes,' then state fully all of such physical injuries—what part of the body was injured? A. Injured on back and left lower limb.

"(25) Q. Did not plaintiff's wife die because of the shock following the operation for the removal of fibroid tumors? A. Yes.

"(26) Q. Did plaintiff leave his wife at the time of the accident? A. Yes.

"(27) Q. If you answer the last question 'Yes,' then state where he went and for what purpose. A. After his horse and help.

"(28) Q. What amount, if any, do you allow the plaintiff for the bill paid for the medical services of Dr. Staats? A. Fourteen dollars.

"(29) Q. What amount, if any, do you allow the plaintiff for the medical services of Dr. Vermillion? A. Nothing.

"(30) Q. What amount, if any, do you allow the plaintiff for the medical services of Dr. P. P. Trueheart? A. Ninety dollars.

"(31) Q. What amount, if any, do you allow the plaintiff on account of hospital fees? A. Ten dollars.

"(32) Q. What amount, if any, do you allow the plaintiff for nurse hire? A. Ten dollars.

"(33) Q. How fast was the automobile going at the time it struck the horse? A. Six miles.

"(34) Q. Where was plaintiff's wife at the time plaintiff was thrown out of the buggy? A. We do not know.

"(35) Q. Where was Mrs. Guldner when first seen by anyone, immediately after the collision? A. North of the automobile, standing in the road.

"(36) Q. Was plaintiff's horse struck by the automobile at the time of the collision? A. Yes.

"(37) Q. If you answer the above question 'Yes,' then state what part of the horse was struck. A. On right hip.

"(38) Q. Was plaintiff's horse struck by the automobile on the right or left side of the horse? A. Struck on right side.

"(39) Q. Which side of the road, if either, was the automobile going at the time of the collision? A. On the south side.

"(40) Q. Which side of the road was the horse go-

ing at the time of the collision? A. The horse was going south.

"(41) Q. Was the horse on the right or left side of the road at the automobile, or in front of the automobile, at the time of the collision? A. More in front."

It will be seen from these findings that the injuries inflicted by the collision were not at all serious of themselves, being mere bruises on the back and the left leg. The fibroid tumors, a long-existing affliction and having no relation to the collision, were the real cause of the trouble. The operation was performed for the removal of these tumors, and not because of the collision. The injuries occasioned by the collision do not appear to have caused the appellant any serious loss on account of being deprived of the services of his wife. Her sickness was of short duration. Whether she had a cause of action against the appellee for the suffering endured by her on account of the bruises received and otherwise was not presented to the trial court, and it is not here. The only question here involved is the loss of services by the appellant because of the injuries to his wife, and expenses incurred on account thereof; and his recovery is limited to such damages. In our view the jury confined the award of damages within this limitation. The allowance may be unduly liberal when thus confined, but the appellant has no reason to complain, and the appellee seems to be satisfied. The deceased wife was a sufferer for years and the cause of expense to her husband, with no prospects of her recovery. The ability to render valuable services to her husband seems to have been very limited. In fact the jury could not make an estimate. We think the jury under the evidence treated the appellant very liberally. He received as much damage as the evidence would warrant.

The appellant contends that, the jury having found that the immediate cause of the death of his wife was the shock of the operation, and not of the collision, the

award of damages for a part of the expenses accruing
on account of the operation is inconsistent and should
be fatal to the whole verdict. This deduction seems to
be logical, but as the appellant is in no sense injured
by such inconsistency, but, if anything, benefited, he is
in no position to complain; and we do not think the
case should be reversed for this reason, but think that
justice will be better subserved by an affirmance. The
judgment is affirmed.